GEORGE K. HIGGINS *vs.* GINSBURG AND GOODMAN, INC.

Suffolk. November 12, 1931. — March 17, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Broker*, Commission. *Contract*, Construction, Performance and breach.

At the trial of an action by a broker for a commission, there was evidence that the defendant, who had begun foreclosure of a mortgage upon land, hired the plaintiff to procure a customer to lend money on the security of the land; that the plaintiff, who was familiar with the entire situation, procured a savings bank to make the loan in an amount and on terms satisfactory to the defendant; that the defendant the next day signed an application to the bank for the loan, which contained a provision that the bank might withdraw its acceptance thereof at any time before the passing of the papers; that the foreclosure was completed two weeks later, the land being purchased at the sale, not by the defendant, as had been anticipated, but by one who thereafter decided to avail himself of the loan from the bank; and that, when the parties met a few days later to complete the transaction with regard to the loan, the bank for the first time imposed a condition which caused the transaction to be abandoned. *Held*, that

    (1) It was an implied term of the agreement between the plaintiff and the defendant that the plaintiff must produce a customer able, willing and ready to make the loan at the time when the defendant could use it, namely, not earlier than the date of the foreclosure of the defendant's mortgage and within a reasonable time thereafter;

    (2) Although the defendant was satisfied with the bank as a customer provided that it should make the loan at the time when it should be needed, there was no final and complete acceptance of the bank by the defendant so as to show that the plaintiff had complied with his agreement with the defendant; and, the plaintiff not having procured to be made a binding contract between the bank and the defendant, he had not earned his commission;

    (3) The circumstance that the defendant signed the application did not bar him from making the defence that there was no compliance by the plaintiff with the terms of the brokerage agreement.

CONTRACT. Writ dated July 14, 1930.

The action was heard in the Superior Court by *Qua*, J., without a jury. Material findings by the judge are stated in the opinion. He found for the defendant. The plaintiff alleged exceptions.

The case was argued at the bar in November, 1931, before *Rugg*, C.J., *Pierce, Wait, Sanderson,* & *Field*, JJ., and afterwards was submitted on briefs to all the then Justices.

*C. F. Lovejoy*, for the plaintiff.

*R. Clayton*, for the defendant.

RUGG, C.J. This is an action of contract by a broker to recover a commission for procuring a mortgage loan. The case was heard by a judge without a jury, who made findings of fact and rulings of law and found for the defendant. The plaintiff excepted to the rulings and decision of the trial judge and to his refusal to grant his requests for rulings.

The facts material to the grounds of this judgment are these: The defendant employed the plaintiff about April 1, 1930, to produce a person ready, willing and able to make a loan of $85,000 on terms satisfactory to it on certain real estate on which it then held a large first mortgage, not then being foreclosed, and a second mortgage for $2,000, on which it had made an entry and had begun publication of a notice of foreclosure sale to take place on April 22. The defendant informed the plaintiff as to the nature of its interest in the property and told him that it was "in control" of the situation. On or about April 7, 1930, the plaintiff produced a savings bank as a person ready and willing to make a loan of $80,000 on the property, and the defendant agreed to the terms and amount offered. With the knowledge and assent of the plaintiff, the defendant signed in a fictitious name an application to the bank for the loan, which contained this paragraph: "It is understood and agreed that the Bank may withdraw its acceptance of this application at any time before the passing of the papers." The bank voted to grant the loan on April 8, 1930. It was then ready, able and willing to make the loan and was indifferent as to the person who might be the mortgagor. The foreclosure sale of the second mortgage took place on April 22 and the property instead of being bought by the defendant as it had apparently anticipated was bought by one McNeil acting in behalf of the owners of the equity. Further negotiations took place between

the defendant, McNeil and the plaintiff to ascertain whether the purchaser would avail himself of the loan already negotiated. This he finally decided to do. The title was found to be satisfactory by the attorney for the bank and on May 2, 1930, the parties met by common consent to transfer the title to McNeil and to take the loan from the bank. The bank then for the first time stated that it would demand $320 as interest on the loan from the time it was voted on April 8, 1930, to May 2, 1930, and refused to make the loan without such payment. Up to that time no such condition had been imposed and the application contained no reference to such payment. Thereupon the passing of the papers was abandoned, and this transaction ended. The judge accordingly found that on May 2, 1930, which was the date fixed by the parties and which was within a reasonable time after the bank had accepted the application, the bank was not willing to make the loan on terms satisfactory to the defendant or to McNeil or to the purchaser represented by the latter.

It is manifest that the plaintiff knew all about the situation and needs of the defendant with respect to the property. The judge finds that the "defendant informed the plaintiff as to the nature of the defendant's interest in the property, and told the plaintiff that the defendant was 'in control' of the situation." That means that the plaintiff knew that the defendant was not then in a position to give or to use a mortgage on the property in question and would not be at least until the foreclosure of the second mortgage which was advertised to take place on April 22. Thus it was necessarily implied by the relation between the parties that the person to be produced by the plaintiff to make the loan on the property must be able, willing and ready to make the loan only at the time when the defendant could use it, namely, not earlier than the date of the foreclosure of the mortgage then in process of being foreclosed; that is to say, on April 22, and within a reasonable time thereafter. That was an underlying condition of the entire transaction between the plaintiff and the defendant. The defendant as the plaintiff well knew could not give a mortgage or use

the loan until it had acquired title to the property through the foreclosure sale.

The plaintiff produced the bank on April 8; but confessedly, as the plaintiff well knew, that was not a time when the defendant wanted or could use the loan. The plaintiff did not, on April 8, produce somebody ready to make the loan upon the conditions made known by the defendant to the plaintiff, because the bank reserved the right to "withdraw its acceptance of this application at any time before the passing of the papers." The application to the bank was in such form as to indicate that a customer produced by the plaintiff was not and would not necessarily be willing at the essential point of time. It was the plaintiff's duty to produce a person ready, willing and able to make the loan at the time when both the plaintiff and the defendant knew it was needed and could be of use. The circumstance that the defendant signed the application does not bar it from making the defence now that there was no compliance with the terms of its agreement with the plaintiff. That offer was what the plaintiff produced and it was all he ever produced. The defendant was content provided the bank should be ready to make the loan as and when required under the terms of the defendant's employment of the plaintiff. Since the bank did not comply with the underlying condition of the plaintiff's agreement, the defendant is not bound. The judge was right in his finding.

It is as if X should say to a broker: "I do not own Blackacre, but I expect to buy it on March 1, 1932. Will you get me a purchaser for $100,000?" On February 1, 1932, the broker produced Y, then ready, able and willing to pay $100,000, but who withdrew his offer on February 28. Plainly such broker had not earned his commission.

It is fundamental in the law of brokers that the broker must produce a customer ready, able and willing to make the purchase or loan upon the terms stated by his employer before it can be said that his commission is earned. The plaintiff did not do that. He produced the bank as customer ready to lend two or three weeks before the defend-

ant could by any possibility use the loan, but the bank refused to make the loan when needed by the defendant. The plaintiff did not cause a binding contract to be made by the bank to make the loan when the defendant needed it. *Roche* v. *Smith*, 176 Mass. 595, 597. There is nothing to indicate that the terms of the application to the bank signed by the defendant were not the most favorable the bank would grant. In any event, the defendant is not liable to the plaintiff because no binding contract was made with the bank. There was no final and complete acceptance by the defendant of the bank as compliance with the agreement of the plaintiff. *Frankina* v. *Salpietro*, 269 Mass. 292, 295. The broker is not bound to make a binding contract by his customer in all instances, in order to recover. A broker is not allowed to recover, where no sale or loan has been made due solely to the refusal of his customer to go through with the transaction and where no binding contract has been made. The broker may recover when the seller who has employed him refuses to go through with the transaction and the buyer is ready, able and willing to complete it. That is not the situation in the case at bar. The defendant was ready to take the loan through McNeil if the bank had not refused to make it at the crucial time by imposing a new and onerous condition.

The case at bar is distinguishable from cases like *Fitzpatrick* v. *Gilson*, 176 Mass. 477, *Buono* v. *Cody*, 251 Mass. 286, *Casey* v. *Fritz Carlton Hotel Co.* 254 Mass. 223, 228, *Stern* v. *Old Colony Trust Co.* 276 Mass. 456. It is governed by *Bemister* v. *Hedtler*, 249 Mass. 40. It is not necessary to review the requests one by one. There was no error in the rulings, refusals to rule or findings of the trial judge.

*Exceptions overruled.*