SAMUEL LIBBY *vs.* ARTHUR H. SMITH.

Suffolk.    January 11, 1935. — February 25, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Broker. Contract,* What constitutes, Parties, Of employment.    *Words,* "Customer."

In an action to recover a broker's commission, on conflicting evidence there were questions for the jury whether the defendant had employed the plaintiff to procure a tenant for certain premises, and, if so, whether the defendant was acting in behalf of a corporation of which he was an officer or for himself personally.

It was not a bar to an action against an individual that the plaintiff had brought an earlier, pending, action for the same cause against a corporation of which the individual was an officer.

On an issue whether a real estate broker had not by double employment forfeited his right to a commission from a lessor of a store, evidence that the lessee asked the broker to "get" him a suitable store, that the broker answered that he would look at his list, that after this conversation he showed other stores to the lessee, and that he called the lessee his "customer," did not require a ruling that the broker in negotiating the lease was acting for the lessee.

CONTRACT.    Writ dated November 9, 1932.

The action was tried in the Superior Court before *F. T. Hammond,* J.

*E. M. Dangel,* (*L. E. Sherry* with him,) for the plaintiff.

*H. F. R. Dolan,* for the defendant.

DONAHUE, J.    The plaintiff, a real estate broker, has brought this action to recover a commission for procuring one Alpert as a tenant of a portion of a store in Central Square, Cambridge. A jury in the Superior Court returned a verdict for the plaintiff and an affirmative answer to the question submitted by the trial judge: "Ought Smith as a reasonable man to have supposed that in bringing Alpert to see him Libby was performing a service for Smith for which he might reasonably expect Smith to pay?" The judge, who had reserved leave under the statute (G. L. [Ter. Ed.] c. 231, § 120), thereafter allowed a motion of the

defendant that a verdict be entered for him. To this the plaintiff excepted and the judge reported for the decision of this court the question whether a verdict should have been entered for the defendant.

The evidence is contradictory as to many material matters but the testimony of the plaintiff and of the defendant are in accord to this extent: the plaintiff and the defendant were strangers when in October, 1931, the plaintiff telephoned to the defendant at his place of business; they talked on the subject of the leasing of a portion of a store in Central Square, Cambridge, to a person whose name was not then mentioned by the plaintiff and it was agreed that on the next day the plaintiff should bring that person to the defendant to discuss the matter of such a lease. It is not in dispute that on the following day the plaintiff brought Alpert to the defendant's office where the matter of such a lease was discussed and that some weeks later a lease to Alpert was made.

One of the contentions of the defendant is that the evidence did not afford the basis for a finding of the employment by the defendant of the plaintiff to procure a tenant for the store and hence that there was no ground for finding him liable to the plaintiff. While there was ample evidence to justify the conclusion that there was no such employment, there was testimony by the plaintiff, the truthfulness of which was for the jury, which would support a finding that the plaintiff was employed to procure a tenant for the store. If the plaintiff was believed he began his talk with the defendant over the telephone by announcing that he was a real estate broker and asking if "the defendant was contemplating the leasing of his store" in Central Square, for a market; when the defendant admitted that he was, the plaintiff said that "he had a customer, a man whom he had been showing several locations for a market and he thought he could probably interest him in this store"; he then asked the defendant "if he had any objection to a broker handling it for him"; to this the defendant replied, "No, I would be glad to have you do it"; and the plaintiff said, "All right . . ."; the plaintiff asked when he could

see the defendant, the latter fixed a time on the following day and the plaintiff said, "I will bring my man along with me" at the time fixed. The defendant was a business man experienced in the management and to some extent at least with the leasing of stores. If the jury believed that the testimony of the plaintiff as to the conversation was true, a finding of an employment of the plaintiff to procure a tenant was warranted. *Maxwell* v. *Massachusetts Title Ins. Co.* 206 Mass. 197, 201. *Isenberg* v. *Rosenthal*, 240 Mass. 108, 110.

The plaintiff testified that in a discussion on the following day between himself, Alpert and the defendant as to the terms of a lease, the latter said that "they would have to let it go for a little while before the defendant could enter into a lease" because "his companies were not in any too good condition and that he wanted to straighten them out first and after he had done this he would give a lease." The plaintiff also testified that a few days later, before any lease was given to Alpert, he went to the defendant, mentioned the reference by the defendant in the earlier talk to "his companies" and stated that he was not interested in the companies and was looking to the defendant for the payment of the commission, and that the defendant replied, "you will get a commission and I will pay it." If this were believed it would add support to the plaintiff's contention that there had been an employment at the time of his telephone talk with the defendant.

The defendant further contends that if any employment of the plaintiff could properly have been found it was not an employment by the defendant personally but was an employment by the Manhattan Food Stores Company, a corporation of which the defendant was president and general manager. It does not appear in the testimony of either plaintiff or defendant that the name of the corporation was ever mentioned in their conversations up to the time the lease was given. The plaintiff testified that he heard that the defendant was the owner of the store. In their conversations both parties referred to the store as the defendant's. The plaintiff proposed to handle the

matter as broker for "him" (the defendant) and the latter accepted without any contrary suggestion. The name "Manhattan Food Stores Company" appeared on the store in question and on the store where the defendant had his office, but we find nothing else in the testimony binding on the plaintiff tending to indicate that any one else than the defendant was concerned with the transaction of employment of procuring a tenant. The conduct of the defendant in his dealings with the plaintiff was consistent with the defendant personally employing the plaintiff. The fact that the defendant did not own the store is a fact bearing upon the question whether he employed the plaintiff as broker to find a tenant, but this is the only bearing which that fact has. *Johnstone* v. *Cochrane*, 231 Mass. 472, 477. It was a question of fact for the jury whether the defendant was personally bound. *O'Neill* v. *Reardon*, 238 Mass. 120, 123. *Zilli* v. *Rome*, 240 Mass. 368, 371.

An attorney employed by the plaintiff, shortly after the lease to Alpert was delivered, brought an action against the corporation to recover a commission for procuring Alpert as a tenant of the store. So far as appears that action is still pending and it is not contended by the defendant that it ever went to judgment. The plaintiff testified that he instructed the attorney to bring the action against the defendant and did not tell him to sue the corporation. An answer of the plaintiff to an interrogatory filed by the defendant in the present case states that an action was brought against the corporation but that the attorney did not follow the plaintiff's instructions to bring suit against the defendant at the same time. In any event the evidence relating to the bringing of the other action was not conclusive against a finding by the jury that the defendant was personally liable.

A more difficult question is presented by the defendant's contention that the plaintiff on his own testimony must be held to have been employed by Alpert to find a suitable store which Alpert might rent for a meat market and that if this were so there could not be a finding against the

defendant. The mere fact that a broker is employed by both parties to a sale or a lease does not in all circumstances prevent his recovering a commission or commissions. *Alvord* v. *Cook*, 174 Mass. 120. *Burr* v. *Beacon Trust Co.* 188 Mass. 131, 133. *Quinn* v. *Burton*, 195 Mass. 277, 279. *Westlund* v. *Smith*, 291 Mass. 96. But a broker can recover no commission if he secretly accepts a double employment involving conflicting duties to parties with adverse interests and has thus put himself in a position where his own interests might be antagonistic to the interests of one or both of his principals. If one of the principals knows of the double employment and the other does not, the broker cannot recover a commission even from the one having knowledge of the double employment. *Rice* v. *Wood*, 113 Mass. 133. *Sullivan* v. *Tufts*, 203 Mass. 155. See *Ebert* v. *Haskell*, 217 Mass. 209, 211. If there were an employment by Alpert there is an aspect of the evidence on which it might be found that the defendant knew of it but under the theory that the plaintiff was acting under an employment by Alpert the record would not seem to furnish ground for finding that Alpert knew of the employment by the defendant. In that situation the plaintiff could not recover from the defendant.

The decisive question on this branch of the case is whether on the plaintiff's own testimony it could properly be ruled as matter of law that there was an employment of the plaintiff by Alpert. The defendant bases his contention that such a ruling would be proper in part on what was said by the plaintiff and by Alpert in a conversation on the only occasion, according to the plaintiff, when anything was said between them which could be thought to have any bearing on the matter of employment. There was no testimony of the plaintiff on direct examination as to this conversation but on cross-examination he testified in substance that he chanced to meet on the street Alpert whom he had known for years and they stopped and talked; in the course of the conversation the plaintiff asked Alpert how the meat business was; the latter replied: "Not so good. Get me a nice location somewhere

will you, Sam?" to which the plaintiff answered, "I will look around; I have already quite a few. I will look up my list." These were all the pertinent words they exchanged. The language can hardly be said to be susceptible only of the inference that there was then and there an employment of the plaintiff by Alpert. One requesting a real estate broker to find for him a suitable store or even to procure for him a designated store does not necessarily create a relation of employment between them. *Laidlaw* v. *Vose*, 265 Mass. 500, 505. If we should assume however that what Alpert said could be taken to be a proposal to become bound to compensate the plaintiff for services rendered as a broker in securing a store which Alpert should lease, rather than a request to an acquaintance, known to be a broker, to bring to Alpert's attention a store from among those of which the plaintiff had the letting, the plaintiff's reply cannot as matter of law be said to have amounted to an acceptance of such proposal. A permissible construction of his answer would be that the plaintiff purposed, from stores listed with him by their owners for leasing, to endeavor to find one which would suit Alpert. So far as the plaintiff's version of the conversation is concerned it could not be ruled as matter of law that Alpert employed the plaintiff. We reach this conclusion apart from the version of the conversation somewhat more favorable to the plaintiff which was given by Alpert. He testified that the plaintiff asked him if he would be interested in a store and said that he (the plaintiff) had several locations on his list and that he would look them up.

The plaintiff's testimony as to the conduct of the plaintiff and Alpert subsequent to the conversation does not, as the defendant contends, require as matter of law the finding that there was an employment by Alpert. The plaintiff testified that during two or three weeks following the conversation he took Alpert around to look at stores in different parts of Boston and its suburbs and "showed him around as a broker shows locations." There is nothing in the record to indicate that the stores referred to

were not listed by their owners with the plaintiff as a real estate broker. The showing of stores by one in business as a real estate broker to a person who is in the market to lease a store is fully as consistent with the broker acting for the owners of the stores as with his acting pursuant to an employment by such a person.

The defendant places reliance on the fact that the plaintiff in his first talk with the defendant referred to Alpert as "a customer" and on the following day introduced Alpert to the defendant as "my customer." On neither the plaintiff's nor the defendant's theory of the facts was it contemplated that Alpert should ever become a "customer" of the plaintiff in the ordinary sense of the word. It was not contemplated by any one that Alpert would ever purchase or acquire anything from the plaintiff. The natural meaning of the word "customer" used by a broker in such circumstances is "prospective customer" of the person having something to sell or transfer. A reference to one as "my customer" by a broker in such a situation ordinarily would be understood as meaning "a prospective customer whom I have produced." For instance, the opinion in *O'Connell* v. *Casey*, 206 Mass. 520, 528, states ". . . the plaintiff's authority was not revoked . . . until after the plaintiff disclosed the name of his customer." The opinion in *Higgins* v. *Ginsburg & Goodman, Inc.* 278 Mass. 497, 501, contains the statement of law: "A broker is not allowed to recover, where no sale or loan has been made due solely to the refusal of his customer to go through with the transaction . . . ." It could not have been ruled as matter of law that by the introduction of Alpert as "my customer" the plaintiff said to the defendant in substance "This is a person who has employed me to act for him in procuring a lease of your store."

We think that it could not rightly have been ruled as matter of law that the plaintiff was employed by Alpert, and that there was evidence on which the jury might find that the plaintiff was employed by the defendant and that pursuant to such employment the plaintiff procured Alpert as a tenant.

The plaintiff's exceptions must be sustained, the verdict of the jury first returned is to stand and judgment is to be entered for the plaintiff on that verdict. *Curley* v. *McDonald*, 263 Mass. 285.

*So ordered.*