**KEITH v. BERRY et al.**

No. 755.

Municipal Court of Appeals for the District of Columbia.

Feb. 21, 1949.

the unpaid balance of $865 allegedly deposited with the broker to be applied toward the purchase of a house. The bonding company was named as codefendant on the basis of a bond indemnifying customers of the broker under the Real Estate and Business Brokers' License Act.[1] The trial court found that appellant had advanced only $605 and that she had been repaid $350. The trial court also held that the balance of $255 had been properly expended for her account and hence that appellee owed appellant nothing. This appeal followed.

Dealings between the parties began sometime in November 1945, when appellant, a woman of little business experience and only a sixth-grade education, who desired to purchase a house, agreed to make periodic deposits with appellee which he was to keep for her until there was enough for a down payment on an acceptable house. The undisputed testimony was that this money was to be returned to appellant whenever she desired it. Appellee, as her agent, was to try to locate a house for her, and she was to reimburse him for his out-of-pocket expenses in her behalf. Over a period of nearly a year she was shown several houses. Offers to purchase were signed by appellant covering two separate premises, but no binding contracts resulted.

On July 31, 1946, appellant signed an offer to purchase another house found by appellee, and this offer was accepted by the owner. The seller was represented by another broker who agreed to split with appellee the commission which the seller agreed to pay. There was a theoretical deposit of $200 on this contract out of the funds held by appellee for appellant. Appellee continued to hold the $200 as one of the brokers in the transaction. The contract contained the usual provisions for title search and settlement and provided that examination of title, conveyance and other ordinary charges were to be at the cost of the purchaser. It also gave to the seller the right to forfeit the deposit if the purchaser failed to complete the transaction. That part of the contract also contained the usual provision that, "In the event of

Charles E. Morganston, of Washington, D. C., for appellant.

Robert C. Handwerk, of Washington, D. C., for appellee Berry.

Joseph A. Carey, of Washington, D. C., for appellee Massachusetts Bonding & Insurance Co., Inc.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant sued appellee, a licensed real estate broker, claiming $515, representing

---

[1] Code 1940, 45—1405.

the forfeiture of the deposit, the seller shall allow the agent one-half thereof as a compensation for his services to him."

Before the time for settlement under this contract arrived, appellant informed appellee that she did not want to purchase this house, that she had made a deposit on another house through another broker, and that she desired appellee to return all the money he held for her. A dispute arose between them as to the amount deposited. The outcome of this dispute was that he gave her a non-interest-bearing note for $600, dated September 24, 1946, and payable 30 days after date. She testified he told her this note was a check which she could negotiate immediately at a bank. Two days after the delivery of the note the broker delivered to appellant's attorney, whom she had just employed, $150 for which the attorney gave appellee a receipt reciting that the payment represented "settlement charges" paid by appellant. On the evening of the day of this payment appellant, at the request of the broker, signed a "general release" which purported to be a release of all claims appellant might have against appellee in connection with the last real estate purchase contract. Subsequently, late in December 1946, appellee paid appellant $200 additional.

Meanwhile, early in December 1946, the $200 deposit held by appellee under the sales contract was "forfeited", and appellee claimed the entire $200 as a credit against the $600 note. Of this $200, $100 was paid by appellee to the seller under the sales contract, $50 was paid to the cooperating broker, and the remaining $50 was kept by appellee.

The circumstances of this "forfeiture" constitute, we believe, the most important question raised on this appeal. As already recited, the sales contract gave to the seller the right to declare a forfeiture if the purchaser did not complete the purchase. The seller, called as a witness by appellee, testified emphatically that he did not de-

clare the forfeiture. He said that he had been in the real estate business more than 40 years and during that time had had only three forfeitures. He added that he had accepted the $100 from appellee on account of the forfeiture only when told by appellee and the other broker that the purchaser was going to forfeit and that therefore he was entitled to one-half of the deposit. He repeated that he had instructed no one to declare a forfeiture. The other broker, who also appeared as appellee's witness, likewise denied that he had initiated the forfeiture. His testimony was that the first time he knew anyhing about a forfeiture was when appellee told him, "You are entitled to one-half of your commission and one-quarter comes out of the deposit as long as she refuses to go through with the deal, as a forfeiture."

The trial court, in a memorandum opinion, concluded as a matter of law that, while the evidence indicated some question as to whether the forfeiture originated on the part of the seller or on the part of the agents, such question was settled by the ratification thereof by the seller and the acceptance by the seller of $100, representing his share of the forfeited deposit. In consequence of this conclusion the trial court held that the entire $200 was chargeable against appellant in her account with appellee.

We do not agree with this conclusion. Appellee was not only admittedly appellant's agent but also trustee of the funds committed to his care. As such he was subject to a duty to act solely for the benefit of his principal.[2] The rule is clear that one may not be an agent for both parties to a transaction without first making full disclosure to both parties and getting their consent to his dual agency.[3] The burden is upon the agent to show such disclosure and consent.[4] Disclosure to only one will defeat his right to compensation from either.[5] "An agent who acts for adverse principals in a transaction is sub-

[2] Restatement, Agency, § 387; Jay v. General Realties Co., D.C.Mun.App., 49 A.2d 752.

[3] 8 Am.Jur., Brokers, §§ 87–89; 80 A. L.R. 1075; cf. Harten v. Loffler, 31 App. D.C. 362.

[4] 12 C.J.S., Brokers, § 111, b(1) (a).

[5] Libby v. Smith, 293 Mass. 465, 200 N. E. 369.

ject to a duty to act with fairness to each * * *. An agent employed by both parties to a transaction, with knowledge by them of his double employment, has the same duty to act with fairness to each that an agent has in dealing with his principal on his own account."[6]

Furthermore, "an agent who, without the acquiescence of his principal, acts for his own benefit or for the benefit of another in antagonism to or in competition with the principal in a transaction is not entitled to compensation which otherwise would be due him because of the transaction."[7] When an agent secretly assumes an attitude antagonistic to his principal, the principal is entitled to repudiate his acts and enforce reparation for the loss sustained.[8]

Here, while the evidence was undisputed that the broker informed appellant that he was to participate in the commission from the seller in the event the sale was consummated and while the contract specified that appellee would participate in the deposit if there was a forfeiture, there was no evidence that the seller was informed that appellee was appellant's agent. Furthermore, the evidence is practically undisputed that the broker initiated the forfeiture without disclosing that fact to appellant. Appellee apparently proceeded on the assumption that when appellant refused to consummate the transaction that resulted in an automatic forfeiture of the deposit. Such was not the case. The refusal by appellant to conclude the transaction gave the seller and the seller only the right to call off the transaction, or to declare a forfeiture or to pursue other remedies. We do not believe that the question of ratification was involved except possibly so far as the seller was concerned. Rather, it was a question of whether appellee violated his duty to appellant by himself initiating the forfeiture without her knowledge and thus profiting to the extent of $50 and causing her to lose the other $150 paid to the seller and the other agent. Our conclusion on this point is that the trial court erred in crediting appellee with $200, on account of the forfeiture.

The trial court's finding of fact that appellant paid only $605 to appellee instead of $865 claimed by her is conclusive on this appeal in view of the conflicting evidence, but it will not be conclusive in the new trial which we find to be necessary because of the error found above. No more conclusive on the retrial will be the trial court's finding that there should be credited against appellant $50 claimed by appellee as out-of-pocket expense in connection with his house-hunting activities for her. Appellee's written statement of these expenses included items on account of obtaining the very contract on which he was to obtain a commission from the seller. While appellee testified that in the beginning he told appellant that he would have to get reimbursement from her for his expenses in locating a house, there was no testimony that he was to be reimbursed for such expenses in a case where the seller was to pay him a commission. In the absence of such a specific agreement, we hold that appellee could not recover such expenses from appellant.

Reversed with instructions to award a new trial.

---

[6] Restatement, Agency, § 392, and comment thereunder.

[7] Restatement, Agency, § 469, comment a.

[8] Fox v. Patterson, 43 App.D.C. 484.