*Northern District*

No. 4601

## JAMES C. MENTON

### v.

## ETHEL J. MELVIN

BROOKS, J. This is an action of contract to recover a real estate brokerage. There was evidence that the defendant listed his property for sale with plaintiff and agreed to pay a commission of 5 per cent. Thereafter the plaintiff introduced to the defendant, Mr. and Mrs. O'Clair, who decided to buy the property for $10,500 and executed a written agreement, paying a deposit of $100. The defendant signed the agreement July 21, 1950, after the execution by the O'Clairs, the conveyance to be on or before August 31, 1950.

Subsequent to the signing of the agreement the plaintiff told the defendant he could have the Watertown Cooperative Bank place a mortgage on the property for $7500, and that he would do so. Defendant testified that she and O'Clair relied on the statement. The written agreement contained no mention of a $3000 cash payment, nor the obtaining of a mortgage.

August 17, Mr. O'Clair notified defendant that he had not been able to obtain a mortgage from the Watertown Cooperative Bank for $7500.00, and "that he had decided the $3,000 as mentioned in the agreement was about all he wanted to pay." O'Clair subsequently asked for a return of the deposit which the defendant refunded without consulting the plaintiff.

The trial court found that O'Clair was not able to purchase on the defendant's terms. He found that the defendant entered into a binding written contract to sell to O'Clair on the terms set forth. He ruled that the defendant therefore accepted O'Clair as a person ready, able and willing to buy the property on terms satisfactory to the defendant. He found for the plaintiff in the amount of $525.00. The crux of the case is the correctness of the trial judge's ruling that the procuring of the execution of the agreement of purchase entitled the plaintiff to a commission.

The fundamental principle in brokerage cases is that where a broker is employed to produce a buyer, the customer whom he introduces to the seller must be ready, able and willing to buy on the terms offered by defendant. No written agreement is necessary. *Dillon v. Barnard,* 1951 A.S. 1083, 1088.

The seller can not by backing out of the agreement deprive the broker of his commission. *Driscoll* v. *Bunar,* 1952 A.S. 219, 220.

On the other hand, if the customer backs out, he is not regarded, as far as the broker's right to a commission is concerned, as ready, able and willing to purchase unless he has signed an unqualified agreement to purchase on the terms offered by the seller. The legal distinction, as affecting the broker, between cases where agreements have and have not been entered into is well stated in *Roche* v. *Smith,* 176 Mass. 595, 597:

"Where the broker is employed to get a customer to buy and pay for his principal's land, and it turns out that the customer is not able to pay for the land, it is settled that his inability to do so does not deprive the broker of his commission, provided the principal made a valid and binding agreement for the sale of the land with the customer produced by the broker. *Ward* v. *Cobb,* 148 Mass. 518. *Burnham* v. *Upton,* 174 Mass. 408, 409. The ground on which this is settled is that by entering into a valid contract with the customer produced by the broker the principal accepts the customer as able, ready and willing to buy the land and pay for it. In such a case the decision would have to be the other way were it not that, by entering into the contract with him the principal accepts the customer produced by the broker; what the broker is employed to do is to produce a customer who will buy and pay for his principal's land. *Fitzpatrick* v. *Gilson,* ante, 477. If it turns out that the customer produced by the broker is not able to pay and does not pay for the land, the broker has not performed his duty and has not earned his commission; and it is only because the principal accepts the customer by entering into a valid contract with him, that it is held in cases like *Ward* v. *Cobb* that the broker has earned his commission. *Coleman* v. *Meade,* 13 Bush, 358. *Donohue* v. *Flanagan,* 9 N.Y. Supp. 275. *Francis* v. *Baker,* 45 Minn. 83. *Wray* v. *Carpenter,* 16 Col. 271. *Lockwood* v. *Halsey,* 41 Kans. 166. *Springer* v. *Orr,* 82 Ill. App. 558."

There is, however, one further factor,—the acceptance of the customer by the seller inferred from the joint execution of an agreement must be an unqualified acceptance. If conditions are stipulated in the agree-

[47]

ment, they must be complied with by the customer before the broker can hold the seller for a commission. *Chapin* v. *Ruby,* 321 Mass. 512, 515; *Clark* v. *Bonner,* 217 Mass. 201:

"But there was evidence that the defendant had not accepted Wheeler definitely and absolutely, but only upon the condition that Wheeler should give to him in payment of a substantial part of the price second mortgages upon the property to be sold and other properties satisfactory to the defendant. There also was evidence that Wheeler never had complied with the condition. If so, the written agreement between the defendant and Wheeler had not become of full effect so as to bind the defendant, and the defendant had not accepted Wheeler as a purchaser and so that the plaintiff had not succeeded in finding a purchaser and negotiating a sale of the property to the acceptance of the defendant. In that event, the plaintiff was not entitled to recover."

The cases cited by the defendant in support of his position are cases either where there was no written agreement or the acceptance was qualified as in *Higgins* v. *Ginsberg and Goodman, Inc.* 278 Mass. 497, 501.

"The plaintiff did not cause a binding contract to be made by the bank to make the loan when the defendant needed it. . . . There was no final and complete acceptance by the defendant of the bank as compliance with the agreement of the plaintiff."

The case which seems most applicable to the facts before us is *Stone* v. *Melbourne* 326 Mass. 372, where the defendants employed the plaintiff to procure a buyer at a commission of 5 per cent. The plaintiff procured such a buyer, who entered into a written contract. The buyer, without adequate excuse cut the contract. The court said:

"The evidence was not that the passing of title was required for the earning of a commission. The plaintiffs were merely to procure a buyer and the commission was to be payable for obtaining a buyer. By entering into a valid contract of sale and purchase with the Shaws, the defendants accepted them as customers able, ready and willing to buy, and made unnecessary any further proof that they were such. (Citations.) The case of *Johnson* v. *Holland,* 211 Mass. 363, is on all fours

with the present case. The direction of a verdict for the defendants was error."

In the present case, no conditions were written into the agreement. Any gratuitous offers of assistance later made by plaintiff had no legal effect on the scope of the agreement. The acceptance of the customer by the defendant was unconditional. The plaintiff, having produced a customer ready, able and willing to purchase on the terms offered by defendant and, therefore having done all that he was required to do, had earned his commission on the execution of the agreement. The trial judge was correct in his findings and rulings.

The report is to be dismissed.

Thomas C. Menton, for the plaintiff.

Frederick T. Conley, for the defendant.