FRANK J. JACKSON, JR., Appellant, v. THE PRI-MADONNA HOTEL, INC., a Nevada Corporation, Respondent.

No. 4759

October 28, 1964                              396 P.2d 28

*Goldwater, Taber and Hill,* and *Wayne L. Mortimer,* of Reno, for Appellant.

*Bible, McDonald & Carano,* of Reno, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

Jackson commenced suit against Primadonna Hotel, Inc. to recover a commission of $21,000 claimed to be due for procuring from one Virgil Smith an "oral commitment for a loan" of $400,000 to Primadonna. The loan was not made. Jackson lost in the trial court, and appeals. We affirm.

By a letter dated May 2, 1961, Primm, the agent of Primadonna Hotel, Inc., gave Jackson the exclusive right for a period of 30 days to obtain a "commitment for a loan for Primadonna Hotel, Inc., a Nevada corporation, in the sum of $400,000." The loan was to be for a period of 5 years, repayable in monthly installments, with interest at 10 percent per annum. Primadonna was to have the right to prepay the loan with a reasonable prepayment penalty. The loan was to be secured by a first deed of trust on the 241 North Virginia Street, Reno, Nevada, property, by an assignment of the lease on contiguous property known as 237–239 North Virginia Street, and by an assignment of the leasehold interest and improvements immediately to the west where a restaurant was being constructed. After receiving his letter of authority, Jackson attempted to secure a loan commitment of eastern trust fund money, but failed. On an airplane trip from San Francisco to Reno, during a casual conversation with Norman Biltz, Jackson mentioned his endeavor to obtain a loan for Primadonna. Biltz indicated that he or his associates might

be interested in making the loan. Later, upon the request of Biltz, Jackson furnished Biltz a copy of the May 2, 1961, letter. After receiving it, Biltz and his associates Smith, Wedge and Dant loosely agreed among themselves to participate in making the loan desired by Primadonna, and Smith was authorized so to advise Primm. On or about May 29, 1961, Smith and Wedge went to Primm's home where Smith advised Primm that he, Smith, would make the loan on the terms outlined in the letter of May 2, 1961. A 5 percent prepayment penalty was discussed and considered acceptable. Smith and Primm shook hands, and departed with the understanding that their attorneys would prepare the documents required to close the deal. Thereafter Wedge, the attorney for Smith, prepared final papers which were delivered to the attorneys for Primm. The documents submitted for signature contained provisions which were substantially different from those contained in the letter of May 2, 1961. We mention only two of them. The proposed final papers required repayment of the loan in annual rather than monthly installments, and contemplated full repayment in four years instead of five.[1] The proposed final papers were never accepted by Primadonna.

It was Jackson's contention at trial, and in this court, that his right to a commission matured the moment Smith told Primm that a loan would be made according to the requirements of the letter of May 2, 1961. At that instant he had procured a commitment for a loan and, on the authority of Simplot Co. v. Rupe & Son, 78 Nev. 111, 369 P.2d 445, had earned his commission. On the other hand, Primm relies upon our opinion in Widett v. Bond Estate, Inc., 79 Nev. 284, 382 P.2d 212. He contends that his meeting with Smith on May 29, 1961, was merely the initial step in a series of negotiations (we have not detailed the various meetings) which ended when the lender submitted final papers that contained terms substantially different than those

---

[1]Though there was some evidence to indicate that this variance may have been a mistake in drafting, the trial court was free to accept the documents at face value, and apparently did so.

outlined in the letter of May 2, 1961. According to Primm, the only "commitment" made by Smith was evidenced by the final papers which Smith's attorney prepared. As those papers did not meet the terms of the May 2 letter, Widett v. Bond Estate, Inc., supra, precludes a commission being due. We turn to resolve these contentions.

In Simplot, supra, the participating lenders were ready, willing and able to consummate a final loan agreement according to their commitments to do so, but the borrower refused to consummate. That case holds that a borrower may not avoid liability for a broker's commission by unilaterally refusing to accept the loan which was committed on terms which he (the borrower) had requested. The present case is different. Here the lender Smith, though orally committing himself to make the loan on terms requested by the borrower, later repudiated that oral commitment by demanding different terms.[2] A broker may not recover compensation by producing a lender who orally agrees to comply with the terms of the offer and then repudiates his commitment and fails to complete the proposed loan. Higgins v. Ginsburg & Goodman, 278 Mass. 497, 180 N.E. 233; Annot., 12 A.L.R.2d 1410. In Simplot the borrower frustrated consummation of the loan; here, the lender did. This difference governs the broker's right to compensation.

Finally, if the proposed closing papers submitted by the lender Smith to the borrower Primadonna Hotel, Inc., may be treated as a "commitment to make a loan" on the terms therein stated (a point on which we express no opinion), then Widett v. Bond Estate, Inc., supra, precludes liability for a commission. Widett

---

[2]Though it is true that some of the evidence indicates that the borrower Primadonna refused to consummate the loan, there is also substantial evidence to support a finding that the lender Smith repudiated his oral commitment to make the loan. For the purposes of this opinion we accept the evidence which supports the judgment.

simply holds that the borrower is not liable to pay a broker's commission when the commitment secured does not meet the terms designated by the borrower. Here all parties concede that the proposed final papers did not substantially comply with the May 2, 1961, letter setting forth the terms on which the borrower was willing to deal. Accordingly we perceive no legal basis on which Jackson may recover in this case.

Affirmed.

McNAMEE, J., concurs.

BADT, C. J., concurring:

I concur, but should prefer to base our affirmance upon the ground that the minds of the parties never met, and would not meet until their agreement had been reduced to writing. Widett v. Bond Estate, Inc., 79 Nev. 284, 382 P.2d 212, and cases therein cited. This was never accomplished.