**Badi MAHMOOD, Appellant,**

v.

**R. Todd NEILSON, Trustee of the Estate of Triad America Corporation, Appellee.**

**Civ. No. 92–C–9B.**

United States District Court, D. Utah, C.D.

July 8, 1992.

Brant H. Wall, Cory R. Wall, Salt Lake City, Utah, for appellant.

Danny C. Kelly, Salt Lake City, Utah, for appellee.

## MEMORANDUM DECISION AND ORDER

DEE V. BENSON, District Judge.

On September 30, 1991, the United States Bankruptcy Court for the District of Utah, the Honorable John H. Allen presiding, denied a claim filed by Badi Mahmood against the Estate of Triad America Corporation in the amount of $42,000.00. An "Order Denying the Claim of Badi Mahmood" dated October 16, 1991 was entered October 21, 1991. This appeal is filed by appellant Badi Mahmood in response to the order disallowing the claim.

### I. Factual Background

Triad America Corporation, (TAC), was a Utah Corporation and holding company for most United States business assets of Adnan and Essam Khashoggi. Subsidiaries of TAC included Triad Properties Corporation (TPC) and subsidiaries of TPC included the Triad Center, (TC), the corporate entity holding title to the Triad Center real estate project in downtown Salt Lake City. Collectively, these entities are referred to as "Triad".

In 1985, plans for expanding the Triad Center by constructing two office towers commenced. Security Pacific Mortgage Company had given Triad a written loan commitment for $90–100 million contingent upon Triad's ability to provide over $3 million in cash and a $2.5 million letter of credit. Because of Triad's serious financial difficulties, they were unable to immediately solidify the terms of the contract with Security Pacific. In late 1985, Triad began looking for methods to finance the Triad Center project and secure the Security Pacific loan. Emanuel Floor, a director and vice-president of TAC and president of TPC, searched out a variety of financing alternatives.

One financing possibility involved Gordon Hall, a developer in Phoenix, Arizona. Floor began discussing with Hall the possibility of Hall's providing the necessary letter of credit in exchange for an equity participation in the new Triad Center project. In separate negotiations, Floor began having discussions with Badi Mahmood, a full-time appraiser and part-time loan broker. In late 1985, Mahmood told Floor that Mahmood had a contact with the chairman of Denver's Silverado Banking, Savings and Loan (Silverado), and that Silverado may be willing to make a loan to Triad. Mahmood was to receive 1.5% of the loan amount as a commission.

In January of 1986, Floor developed a loan proposal which he and Mahmood presented to Silverado on January 16, 1986 in Colorado. Floor proposed that TPC would obtain a $3.7 million loan which would be used by Triad to clear title and provide equity to close the Security Pacific construction loan. The loan was to be guaranteed by Hall and secured by real property which Hall owned. Floor and Mahmood returned to Utah and Silverado took no action on the loan proposal. Communication between Silverado and Mahmood continued, but ultimately no deal was ever closed between Silverado and Triad. However, Hall closed a loan with Silverado which neither benefitted nor concerned Triad. The loan proposal presented to Silverado by Floor and Mahmood was never acted upon. No loan or financing commitment was issued to Triad by Silverado. Mahmood maintains that he is entitled to a 1.5% commission on the loan to Hall pursu-

ant to the arrangement between Floor and Mahmood for Mahmood's assistance in arranging financing for Triad. Floor refused to pay Mahmood and testified at trial that, "I just, in the strongest words I could use, explained to [Mahmood] that Triad America had no obligation to pay him a fee. We didn't benefit directly or indirectly and I suggested that he send his invoice to Gordon Hall directly."

Triad America Corporation along with a number of its subsidiaries filed voluntary Chapter 11 petitions on January 27, 1987. On April 26, 1988, Badi Mahmood filed a proof of claim seeking payment in the amount of $42,000.00 for a commission allegedly due for his services as a broker in arranging financing for Triad America.

## II. Discussion

Pursuant to Federal Rule of Bankruptcy 8013, the district court may set aside findings of fact only if those findings are clearly erroneous. The Rule requires that, "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." A clearly erroneous finding exists, "when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Kidder Skis Int'l. v. Williams*, 60 B.R. 808, 809 (W.D.Mo.1986), *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). "Limiting the district court to a review of the bankruptcy court's findings under the clearly erroneous standard is appropriate because a duplication of the bankruptcy court's efforts is unlikely to contribute significantly to the accuracy of fact determinations and is not an efficient use of judicial resources." *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 400 (10th Cir.1986). "The bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *In re Reid*, 757 F.2d 230, 233–234 (10th Cir.1985).

The bankruptcy court concluded that Mahmood's claim was invalid and did not require payment. The conclusion was based upon the well established principle that a broker is entitled to a commission "upon producing a party who is ready, willing and able to perform pursuant to the terms offered by the principal". *William G. Vandever & Co. v. Black*, 645 P.2d 637, 639 (Utah 1982). Mahmood introduced Triad to Silverado, but no loan resulted from this association. As such, payment of a commission is not appropriate. "The borrower is not liable to pay a broker's commission when the commitment secured does not meet the terms designated by the borrower." *Jackson v. Primadonna Hotel, Inc.*, 80 Nev. 454, 396 P.2d 28, 29 (1964).

Mahmood maintains that the bankruptcy court failed to give adequate attention to a letter written by Floor to Hall on March 31, 1986 which acknowledged an obligation to pay Mahmood a fee, and that ignoring this letter resulted in a holding which was clearly erroneous. This letter, when viewed contemporaneously with the entire record, is insufficient to convince this court that the holding of the bankruptcy court warrants reversal. The weight of the evidence shows that Mahmood's introduction of Floor to Silverado resulted in nothing more that an informal acquaintance. No loan was obtained through Mahmood's actions and the loan taken out by Hall did not benefit Triad. It was a separate transaction which had no connection to or influence upon Hall's dealings with Triad. One reference in a letter cannot defeat the overwhelming evidence which tends to show that Mahmood is not legally entitled to a commission.

Mahmood states in his brief that, "The bankruptcy court correctly ruled that in the mortgage broker profession, the commission is earned when the lender accepts the terms of the borrower, regardless of whether the loan actually closes." This assertion is of little help to Mahmood, however, since the terms of the loan proposal offered to Silverado by Floor and Mahmood were never agreed to. Silverado did not act upon the proposal. Mahmood has no legal basis for collecting a commission.

His negotiations did not result in a loan for Triad, and the 1.5% payment is inappropriate.

The holding of the bankruptcy court is not clearly erroneous and the court is not "left with a definite and firm conviction that a mistake has been committed." *Kidder Skis Int'l.*, 60 B.R. at 809. The ruling of the bankruptcy court is affirmed.

IT IS SO ORDERED.