HARRY ISENBERG *vs.* ARTHUR WILLIAMS.

Suffolk.    November 13, 1939. — May 28, 1940.

Present: DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Broker,* Commission. *Contract,* What constitutes, With agent, Validity.
   *Agency,* Agent's liability to third person. *Lord's Day.*

On evidence that a defendant, not being in fact the owner of certain
   real estate, requested a real estate broker to procure a customer for
   it, leading the broker to believe justifiably that he was acting for
   himself, and later purchased the property at a foreclosure sale before
   conveying it to a customer produced by the broker, it could be found
   that there was a contract of hire between the broker and the defendant
   personally.
The mere fact that a day when a broker was requested to procure a
   customer for real estate and was promised a commission for so doing
   was a Lord's Day did not make illegal the contract completed between
   the parties when the broker produced a customer on a secular day.

CONTRACT. Writ in the District Court of Chelsea dated
July 18, 1938.

Upon removal to the Superior Court, there was a finding
for the plaintiff in the sum of $205 by *Brogna,* J. The de-
fendant alleged exceptions.

*A. Williams,* pro se.

*I. E. Newman,* (*M. J. Wheeler* with him,) for the plaintiff.

Donahue, J.  The plaintiff brought this action to re-
cover a commission for procuring, at the request of the
defendant, a customer for a parcel of real estate.  A judge
of the Superior Court sitting without a jury found for the
plaintiff.  He denied the defendant's requests for rulings to
the effect that the evidence did not warrant a finding that
there was a contract of hire between the plaintiff and the
defendant personally, and that the evidence did not war-
rant a finding for the plaintiff.

The judge made the following findings: One Weiner and
one Riman, doing business as the Dorchester Lumber Com-
pany, were the owners of two adjacent parcels of land in
Revere with a dwelling house on each parcel, standing in
the name of Riman.  A savings bank held one mortgage
covering both properties, on which there was due $7,300.
It had started foreclosure proceedings by publication in the
usual way.  The plaintiff was informed that the Dorchester
Lumber Company was the owner of the properties and tele-
phoned to the company that he had a prospective buyer.
As a result, the defendant telephoned to the plaintiff and
made an appointment.  The defendant with Weiner went
to see the plaintiff.  The "defendant without disclosing
that he was acting as attorney and that he had no financial
interest in the Dorchester Lumber Company led the plain-
tiff to believe that he was the Dorchester Lumber Company
and employed the plaintiff to obtain a purchaser for either
or both properties before the foreclosure, it being under-
stood that the plaintiff was to receive the usual commis-
sion," which the judge found to be four per cent of the sale
price.  A few days later the plaintiff introduced to the de-
fendant a prospective buyer with whom negotiations were
carried on for a short time, without result.  About ten
days before the date set for the foreclosure sale, the plain-
tiff introduced to the defendant as a prospective buyer one
Vilker and, after a few conferences between Vilker and the
defendant in which the plaintiff participated, negotiations
between the defendant and Vilker were continued until a
few days before the foreclosure sale, without any definite
conclusion being reached, but the negotiations were not

definitely suspended or abandoned. Vilker and the defendant, without prearrangement, attended the foreclosure sale. Before the sale began an agreement was made by Vilker and the defendant to the effect that the latter was to purchase the properties at the sale and that Vilker would thereafter purchase one of the parcels from the defendant for $5,000, the price that the defendant had first asked for that parcel at the first or second conference with Vilker which the plaintiff attended. The defendant bid $7,550 for the two parcels. This was the highest of several bids and the defendant became the purchaser, Vilker furnishing the deposit required by the terms of the sale. Later the defendant sold to Vilker for $5,000 the house and land that Vilker had agreed to buy. There was evidence to support the findings made by the judge.

The fact that the defendant ultimately made a sale of the property to a customer introduced to him by the plaintiff is not in dispute. The plaintiff in order to recover in this action was bound to show that the defendant employed him as a broker and that he did what he was hired to do.

At the time of the alleged hiring the equity in the real estate was in fact owned by Weiner and Riman. It is contended by the defendant that, if any contract of employment of the plaintiff as broker was made, it was a contract between the owners and the plaintiff. The fact that at the time of the hiring the defendant did not own the property was a circumstance to be considered in determining whether he in fact personally employed the plaintiff as a broker. But, one not owning property may hire a broker to sell it and thereby render himself liable for a commission (*Johnstone* v. *Cochrane,* 231 Mass. 472, 477) even though he does not personally gain an advantage from the efforts of the broker who produced a customer. *Monk* v. *Parker,* 180 Mass. 246, 248. In the last cited case it is said: "If the broker is ignorant what the defendant's relation to the land is, and is asked to find a purchaser for the land, and does find one, who is willing to buy on terms satisfactory to the defendant, his commission is earned, even if the defendant does not then own the land

and afterwards is unsuccessful in buying it, or if for any other reason he cannot avail himself of the offer procured by the broker." See also *Buono* v. *Cody,* 251 Mass. 286, 291. The fact in the present case that the defendant finally purchased the property for himself before the sale to the plaintiff's customer does not affect the application of this rule.

A conclusion was warranted from the evidence that the defendant purported to act as principal and that the plaintiff was justified in believing that the defendant was so acting. If the plaintiff performed what he was hired to do the defendant could be found liable for the amount of the commission agreed upon even though the defendant was in fact acting as an agent and not as a principal. *Libby* v. *Smith,* 293 Mass. 465, 468. *Buono* v. *Cody,* 251 Mass. 286, 291. *O'Neill* v. *Reardon,* 238 Mass. 120, 123.

The fact that the day when the parties first met and discussed the matter of a sale of the property was Sunday, did not, as the defendant contends, make the undertaking of the defendant to pay a commission to the plaintiff on the production of a customer illegal. Illegality of the agreement was not set up in the defendant's answer, *Smith* v. *Miles,* 296 Mass. 126, 128, and furthermore, what was said on the Sunday in question amounted only to an offer by the defendant and a contract did not arise until the plaintiff produced a customer who was ready, able and willing to purchase the property, which event does not appear to have occurred on a Sunday. *Maher* v. *Haycock,* 301 Mass. 594, 596.

The bill of exceptions includes an exception by the defendant to the denial of his motion to nonsuit the plaintiff, filed after the trial and a finding for the plaintiff, during a hearing to settle the form of the bill of exceptions. Such a motion has no standing. [1]

*Exceptions overruled.*

---

[1] The bill of exceptions contained the following: ". . . during hearing on bill of exceptions, the defendant presented a motion to the trial justice to nonsuit the plaintiff, reading as follows: 'Now comes the defendant and moves that the plaintiff be nonsuited for failure to file to the defendant's interrogatories answers thereto that were his own and that were properly sworn to . . . .' The motion for nonsuit was denied and exception thereto duly taken by the defendant." — Reporter.