## JOHN B. LOBOSCO *vs.* ERNEST J. DONOVAN.

No. 89-P-678.

Norfolk. May 17, 1990. - January 31, 1991.

Present: ARMSTRONG, PERRETTA, & JACOBS, JJ.

*Broker*, Commission. *Contract*, With broker.

A real estate broker was entitled to a commission from the owner of resi-
dential property in a situation in which the sale of the property to a
prospective buyer produced by the broker, in accordance with a broker-
age agreement signed by the owner, was prevented by the owner's deci-
sion to take advantage of a higher offer from the ultimate buyer. [55-
56]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 19, 1983.

On transfer to the Brookline Division of the District Court
Department, the case was heard by *Lawrence D. Shubow*, J.

On appeal to the Superior Court Department, the case was
heard by *J. Owen Todd*, J., on a statement of agreed facts.

The case was submitted on briefs.

*Walter E. Palmer* for the defendant.

*Philip S. Olsen & James B. Muldoon* for the plaintiff.

ARMSTRONG, J. The defendant appeals from a judgment
holding him liable for the payment of a real estate broker's
commission on the sale of his house. The brokerage agree-
ment which the defendant signed, an "exclusive," provided
that the plaintiff would be entitled to a six percent commis-
sion if the house should be sold to any buyer by August 31,
1983, or if the house should be sold at any time thereafter to
a buyer produced by the plaintiff. As the house was, in fact,
not sold until 1984, to a buyer produced by another broker,
the defendant contends that the judgment was in error.

The facts were stipulated. In 1972 the house was conveyed to the defendant and Dorothy R. Donovan, "husband and wife, as tenants by the entirety"; but the defendant and Dorothy R. Donovan were not legally husband and wife, she having been separated but not divorced from one William H. Donovan. The legal effect of the conveyance, under the law applicable to conveyances made prior to August 30, 1979,[1] was to vest title in the defendant and Dorothy R. Donovan as tenants in common, *Fuss* v. *Fuss (No. 2),* 373 Mass. 445, 450 (1977), with the result that, when Dorothy R. Donovan died intestate in 1981, her interest passed to her husband William H. Donovan and her children (all by William H. Donovan) rather than to the defendant. The stipulated facts do not disclose whether the defendant was aware that he was not the sole owner when he listed the house with the plaintiff on July 19, 1983.

The plaintiff produced a buyer who tendered an offer of $170,000 to the defendant on August 9, 1983. The offer was in writing, on a form of the Greater Boston Real Estate Board which provided a line for the seller to subscribe his acceptance. This the defendant did on the evening of August 9. The offer form also provided that the parties should execute a standard form purchase and sale agreement by August 29, 1983, and close by October 10. The buyer forwarded a signed purchase and sale form on August 24, 1983. The defendant did not sign; instead, his attorney on August 26 sent a letter to the buyer explaining that the defendant could not execute the purchase and sale agreement because he was not in a position to convey a good and clear record and marketable title (as required by a provision of the original offer form). The buyer's deposit checks were returned to him.

On August 17, 1983, a week after the defendant had accepted the offer and a week before he received the purchase

---

[1]Statute 1979, c. 239, effective August 30, 1979, added to G. L. c. 184, § 7, a paragraph that reads: "A conveyance or devise of land to two persons *as tenants by the entirety,* who are not married to each other, shall create an estate in joint tenancy and not a tenancy in common." Section 2 of the act provided that the amendment should apply only to conveyances made after its effective date.

and sale agreement for signing, he received a higher offer, $185,000, from a buyer produced by another broker. This offer, too, he accepted, presumably (his acceptance was undated) by its expiry date, August 19. The record is silent concerning events between that time and February 13, 1984, when Edward J. Donovan, a son of Dorothy R. Donovan, was appointed administrator of his mother's estate; but shortly thereafter, the administrator and the defendant executed an agreement to sell the house to the second buyer, which sale was closed in June, 1984, each seller executing a deed conveying his undivided one-half interest. From the facts that the defendant accepted both offers and elected to proceed with the second rather than the first, the judge drew an inference of bad faith, which we take to mean that the defendant's actual motive for refusing to sign the first purchase and sale agreement was his receipt of the higher offer rather than his inability to furnish a marketable title.

In the absence of argument to the contrary, and without deciding, we accept the parties' assumption that the defendant, when he signed his acceptance of the first offer, bound himself to the sale: that the accepted offer form was, in effect, a purchase and sale agreement, despite the fact that it contemplated the execution later of a more detailed purchase and sale agreement. The fact that the defendant did not own all the title he had agreed to convey would not by itself prevent the agreement from being binding. See *Isenberg* v. *Williams*, 306 Mass. 86, 88-89 (1940); *Coney* v. *Brookline Savings Bank*, 327 Mass. 527, 528 (1951); *McKallagat* v. *LaCognata*, 335 Mass. 376, 378 (1957); *Coleman* v. *Kasow*, 356 Mass. 733 (1969). On the judge's findings, the defendant's incomplete title was not the reason for his failure to attempt in good faith to effect the sale; rather, it was the higher offer from the ultimate buyer.[2]

---

[2]We emphasize, therefore, that we are not called upon to decide the case argued by the defendant: one in which a seller, mistakenly thinking he owns a property, contracts to convey it and, upon discovery that he is unable to do so, attempts rescission on the ground of mistake or impossibility.

The defendant, having accepted the buyer produced by the plaintiff and entered into a binding agreement to sell, was obligated to pay the commission on the sale if it should fail of completion through his (the defendant's) own wrongful act or interference. *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 629 (1975). *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. 399, 402 (1985). On the judge's findings, that is the situation: the defendant prevented completion of the sale so as to take advantage of a higher òffer. Compare *Kinchla* v. *Welsh*, 8 Mass. App. Ct. 367 (1979). Perhaps, if the defendant had attempted in good faith to honor the first contract, its completion might have been frustrated by the administrator, particularly in light of the higher offer; but that point was not reached, the defendant having elected first to enter into an inconsistent contractual obligation and to repudiate the earlier contract. This was a "wrongful act" by the seller within the meaning of the *Tristram's Landing* decision.

If the case is analyzed as one outside of the *Tristram's Landing* rules, governed instead by a special brokerage agreement (as to which see the *Tristram's Landing* decision at 627; *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. at 403-404) making a sale a condition of the broker's commission, the result would not be different; for it is fundamental that a promisor may not avoid his promised performance based on the nonoccurrence of a condition, where the promisor has himself hindered or prevented its occurrence. *Rigs* v. *Sokol*, 318 Mass. 337, 345 (1945). *Cellucci* v. *Sun Oil Co.*, 2 Mass. App. Ct. 722, 733 (1974). Restatement (Second) of Contracts § 245, and comment a, illustration 2 (1981).

*Judgment affirmed.*