Forte, J.
This is an action in contract for the plaintiff-broker’s recovery of a real estate commission for producing a ready, willing and able buyer whose failure to purchase the subject property was allegedly attributable to the defendant-seller’s misconduct.
The plaintiff has appealed the trial court’s allowance of the defendant’s Dist./Mun. Cts. R Civ. P., Rule 56 motion for summary judgment. The pleadings, affidavits, depositions and answers to interrogatories submitted by both parties indicate the following:
In November, 1987, the plaintiff drafted and both parties executed an exclusive brokerage agreement for the plaintiffs listing of the defendant’s commercial property at 446 River Street in Hudson, Massachusetts at a selling price of $1,200,000.00. During the eight month term of such agreement, the defendant-seller was obligated to
pay [the plaintiff] a commission in accordance with the following schedule if [the plaintiff] procures a Buyer for the property or if such Buyer is procured by others or directly by the undersigned.
SCHEDULE:
*22 5% of total selling price is due in full and payable to [the plaintiff] if as and when naners nass... [emphasis supplied].
In February, 1988, the plaintiff showed the defendant’s property to Frank M. Casaceli who later returned to the site on several occasions and talked to the defendant-seller. On February 23,1988, Casaceli made a purchase[2] offer. In response to the defendant’s requestfor some demonstration that his interest in the property was genuine, Casaceli issued a check in the amount of $1,000.00, payable to “J & D Realty Associates”, upon which be initialed the following: “Subject to approval of P. & Sale by my attorney.” Casaceli also prepared and signed a handwritten memorandum which stated:
2/23/88
This check is given to J & D Realty Assoc. as an intent to purchase property at 446 River Rd. in Hudson, Mass. subject to my attorneys approval of a purchase and sale agreement.
The defendant signed the memorandum, and initialed the following: “Rec’d CK #150 for sum of $1,000. Not to be cashed.”
The plaintiff s conclusory allegations that be was never informed of Casaceli’s offer were contradicted not only by the defendant's averment that the plaintiff was aware at all times of the terms of his negotiations with Casaceli, but also by Casaceli’s deposition testimony that the plaintiff was actually present at the February meeting when he made his purchase offer.
There was no genuine dispute as to the parties’ intent in signing the February 23, 1988 memorandum. Both the defendant and Casacelli indicated that they never intended the memorandum to be a binding, final contract, and understood that any agreement between them remained subject to both the approval of their attorneys, and the negotiation, drafting and execution of a formal purchase and sale agreement.
Subsequent to the Casaceli offer, the defendant met with the plaintiff-broker and a second prospective purchaser, Donald Hager, who had contacted the defendant after seeing “For Sale” signs on the property. Hager averred that both parties informed him they had a prior offer of $1.15 million dollars, and that the plaintiff repeatedly urged him to offer more money and to sign a purchase and sale agreement that day.
Although it is undisputed that Casaceli arrived at the site during the meeting with Hager, the parties’ accounts of the incident and the resulting termination of the Casaceli transaction vary. The plaintiff averred that he encouraged the defendant to honor his agreement with Casaceli, but that the defendant demanded an additional $50,000.00 from Casaceli by 6:00 P.M. and Casaceli angrily refused to agree to the additional sum. Conversely, Casaceli’s deposition indicates that it was the plaintiff who informed him that another party had made a higher offer[3] and requested that he come to the River Street site. Casaceli’s deposition further indicated that the plaintiff then joined with the defendant in urging him to agree to the additional amount. Disgusted with the defendant’s attempt to obtain a higher price and assuming that Hager’s offer would be accepted, Casaceli withdrew from further negotiations after consulting with his attorney.
The defendant ultimately sold the property on his own to a third party subsequent to the expiration of his brokerage agreement with the plaintiff.
1. There was no error in the allowance of the defendant’s Dist/Mun. Cts. R Civ. P., Rule 56 motion for summary judgment as the defendant’s affidavits and supporting materials effectively established the plaintiff s inability to prove essential elements of its claim for a real estate brokerage commission. Kourouvacilis v. General Motors *23 Corp., 410 Mass. 706, 714 (1991).
A real estate broker is generally entitled to a commission only when:
(a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract.
Tristam’s Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975). Assuming for Rule 56 purposes, Graham v. Quincy Food Serv. Employees Assoc., 407 Mass. 601, 603 (1990), that Casaceli was ready, willing and able to buy on the defendant’s terms, it remains undisputed that Casaceli failed to complete the parties’ transaction by purchasing the defendant’s property and closing title.
Equally clear from the Rule 56 materials advanced herein is that no binding contract of sale was ever entered into by Casaceli and the defendant. Both Casaceli’s check and the parties’ written memorandum were expressly conditioned upon the approval by legal counsel of a purchase and sale agreement.
The norm in real estate transactions has been that, where the parties sign a writing contemplating the later execution of a purchase and sale agreement, they do not intend to be bound until that time.
Levinson v. L. M. I. Realty Corp., 31 Mass. App. Ct. 127, 130 (1991). See also, Tull v. Mister Donut Develop. Corp., 7 Mass. App. Ct. 626, 630 (1979). Such “strong inference” of the parties’ intent arising from their reference to a future agreement, Rosenfield v. United States Trust Co,. 290 Mass. 210, 216 (1935) is further supported by their rendering such agreement subject to the approval of at least Casaceli’s attorney. See Levinson v. L.M.I. Realty, supra at 130-131. This construction of the memorandum, which presented a question of lawfor thecourt, USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, (1989), is consistent with Casaceli’s and the defendant’s respective averments and deposition testimony that the memorandum was never intended or understood as a final, binding contract.
The plaintiffs contrary contention, based on Coan v. Holbrook, 327 Mass. 221 (1957), that the parties’ settlement of all essential purchase and sale terms resulted in a binding agreement[4] as of February 23,1988, is at best immaterial. The plaintiff could not defeat the defendant’s summary judgment motion simply by rejecting the signatories’ statement of their own intent, or by disregarding the unequivocal language of the very memorandum upon which the plaintiff relies.
2. Although a seller and broker may contractually alter the general requirements for earning a commission, Capezzuto v. John Hancock Mut. Life Ins. Co., 394 Mass. 399, 403 (1985), there is nothing in the parties’ brokerage agreement herein which dispenses with a binding purchase and sale contract and a title closing as prerequisites to commission payment. The plaintiffs contrary assertion, that a commission was automatically due "if [the plaintiff] procured a Buyer,” reduces much of the listing agreement which the plaintiff drafted to mere surplusage in violation of established canons of contract construction. See J. A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986)
The plaintiff ignores the controlling language of the agreement which obligated the defendant-seller to pay a commission only “in accordance with the following schedule.”'Such schedule rendered any commission “due in full and payable... if as and when nanersnass...” [emphasis supplied]. The underscored phrase is unambiguous and constituted a condition precedent to the plaintiffs entitlement to any brokerage *24 commission. Spritz v. Brockton Sav. Bk., 305 Mass. 170, 171 (1940); Goldman v. Eisenberg, 256 Mass. 566, 567 (1926); Creed v. Apog, 6 Mass. App. Ct. 365, 372 (1978), modified on other grounds 377 Mass. 522 (1979).[5]As the evidence established that the plaintiff could not satisfy its burden of proving that such condition precedent was satisfied, the defendant was entitled to summary judgment in its favor as a matter of law. See, as to burden of proof, Creed v. Apog, supra, 6 Mass App. Ct. at 372.
3. Satisfaction of a condition precedent may, of course, be excused where the promisor hinders the performance or occurrence of the condition. Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 733 (1974). This proposition of law is reflected in the exception to the Tristam’s Landing rule which permits recovery of a real estate commission where the “wrongful act or interference of the seller” results in the failure to complete the sales contract. However, the plaintiff could not avail itself of this exception to recover herein as the defendant and Casaceli never executed a binding contract of sale. Even “where the seller is responsible for the failure to complete the transaction, no commission is owing unless the seller has signed a binding agreement with the broker’s client.” Capezzuto v. John Hancock Mut. Life Ins. Co., supra at 403.
4. To render inapplicable the Capezzuto requirement of a binding sales contract as a prerequisite to a real estate commission, the plaintiff-broker was required to advance sufficient facts demonstrating that the defendant-seller “engaged in bad faith dealing or some other misconduct” or evidenced “a purpose... to obtain without payment a profit from the broker’s exertions.” Id. at 404. The plaintiff’s allegations and aver-ments, however, were insufficient to indicate the necessity of a trial of this issue. Even if the plaintiff’s concluso ry allegations that the defendant concealed his meetings with Casaceli were undisputed, nothing in the parties’ brokerage agreement prohibited the defendantffom talking to aprospective purchaser already known to the plaintiff. Mere participation in meetings preliminary to his acceptance of any purchase offer also fell short of evidence of an intent by the defendant to deprive the plaintiff of a commission upon the actual sale of the property. Compare seller’s conduct in Turner v. Minasian, 358 Mass. 425 (1970); Siegel v. Lowe, 327 Mass. 154 (1951); Bump v. Robbins, 24 Mass. App. Ct. 296 (1987). The plaintiffwould have been entitled to a commission, under the parties’ brokerage agreement, upon any sale to Casaceli within either the eight month term of the agreement or the ensuing six month period even if such sale had been negotiated by the defendant.
Moreover, “a seller ordinarily expects that he is free to sell to whomever he chooses until he has signed a purchase and sale agreement.” Capezzuto v. John Hancock Mut. Life Ins. Co., supra at 403. Such reasonable expectation obviously includes the right to sell at the highest price. Disregarding for Rule 56 purposes all evidence that the plaintiff joined with the defendant in the conduct he now terms wrongful, the defendant’s insistence that Casaceli match Hager’s purportedly higher offer did not rise to the level of “bad faith” or “misconduct.” Compare seller’s culpable conduct after execution of binding agreement in Snowden v. Cheltenham, 337 Mass. 295 (1958); Lobosco v. Donovan, 30 Mass. App. Ct. 53 (1991); Lipis v. Landano, 7 Mass. App. Ct. 894 (1979).
5. There being no error, the trial court’s allowance of the defendant’s motion for summary judgment is hereby affirmed. Report dismissed.

 The evidence was conflicting as to the amount of Casaceli’s purchase offer. The defendant averred that the offer was for $1.15 million dollars, while the plaintiff alleged it was $1.1 million. Casaceli could not recall the specific amount Hager, a second prospective purchaser, averred that both parties informed him that they had an offer of $1.15 million.

 There is no evidence that Hager had made any purchase offer at that time.

 The memorandum in fact omits necessary material terms, not the least of which is the purchase price, upon which the parties now disagree, and the defendant’s unequivocal promise to sell at such price. Absent these and other essential terms, the memorandum appears insufficient to constitute a binding agreement for sale or to be enforceable under the Statute of Frauds. See G.L.c. 259, §1; Fichera v. Lawrence, 312 Mass. 287, 289 (1942); Tull v. Mister Donut Develop. Corp., supra at 630-631.

 Contrast, for language merely specifying time for commission payment rather than condition precedentthereto, McCarthy v. Daggett, 344 Mass. 577 (1962) (“upon the passing of papers”); Canton v. Thomas, 264 Mass. 457 (1928) (“when papers are passed”); Leech v. Ebers, 12 Mass. App. Ct. 1004 (1981) (“at time of closing”).