Sherman, P.J.
This is an action for indemnification, pursuant to the parties’ agreement for the sale of corporate stock, to recover from defendant James DiCostanzo (“DiCos-tanzo”) the amount of a judgment obtained by the Boston Globe in a separate action *195 against Johannes Reineke (“Reineke”), the plaintiff herein. DiCostanzo denied Reineke’s claim on the grounds that the parties’ purchase agreement restricted his indemnification obligations to two specifically enumerated debts which did not include the Boston Globe bill. The parties’ filed cross-motions for summary judgment, and the court ruled in Reineke’s favor. DiCostanzo thereafter brought this Dist./Mun. Cts. R. A. D. A., Rule 8A appeal.
Reineke and John Visconte (“Visconte”) were the sole stockholders of Smyly Chevrolet, Inc. (“the Corporation”), an automobile dealership in Wakefield, Massachusetts. In the summer of 1985, when the Corporation was close to insolvency and in danger of losing its Chevrolet franchise, Reineke negotiated the sale of all his stock shares and Vis-conte’s to DiCostanzo. By Purchase Agreement (“the Agreement”) dated August 5, 1995, DiCostanzo bought one hundred (100%) percent of the Corporation’s stock for $1.00 and additional obligations set forth in paragraph F, which stated:
F. Reineke and Visconte have agreed to sell the Reineke Shares and the Vis-conte Shares to DiCostanzo for One ($1.00) Dollar, but only upon the condition that DiCostanzo either (a) have Reineke, Woodcome, Visconte and Wallem removed from their obligations and as personal guarantors of the Smyly Obligations and/or the Bank Obligations or (b) indemnify and hold harmless Reineke, Woodcome, Visconte and Wallem against any and all costs, loss or damage which either or all of the foregoing may incur or suffer under the Bank Obligations or the Smyly Obligations.[2]
The “Smyly Obligations” were not general corporate debts and liabilities of Smyly Chevrolet, Inc. They were instead expressly defined in paragraph D as obligations owed, inter alia, to an individual named Smyly and to a separate corporation bearing the Smyly name. Paragraph D stated:
D. Reineke and William J. Woodcome (“Woodcome”) are either signatories to or the guarantors of certain obligations of the Corporation under two promissory notes, a consultation agreement and a lease agreement, all dated September 1,1982, and running to Wilfred J. Smyly, Jr., Richard Presti or Smyly Leasing, Inc. (collectively the ‘Smyly Obligations’).
Similarly, the “Bank Obligations” assumed by DiCostanzo did not encompass general Corporation debts, but were specifically identified in paragraph E as follows:
E. Visconte, Nancy Visconte, Reineke and Wallem have each personally guaranteed the obligations of the Corporation to BayBank Middlesex, N. A. (‘the Bank Obligations’).
Finally, the only remaining reference in the Agreement to any general indemnification obligation of DiCostanzo’s was contained in the following paragraph of Section 12:
DiCostanzo agrees to defend, indemnify and hold harmless the Seller against and in respect to (i) any suits, litigations, claims or any other liabilities which may after the Closing be asserted against Reineke or Visconte in connection with the business of the Corporation, unless caused bv actions bv the Corporation prior to the Closing Date or to independent action bv either Vis-conte or Reineke at any time [emphasis supplied].
The Boston Globe debt at issue herein was for advertising expenses incurred by the *196 Corporation in 1982, well prior to the 1985 closing date, and personally guaranteed by Reineke in 1983.[3] There is no reference to the Boston Globe debt in the text of the Agreement. In fact, the Globe debt appears only once, as one of 113 accounts payable listed in Exhibit L.[4] Exhibit L is defined in the Agreement as a “list of all accounts receivables and accounts payable of the Corporation ... [emphasis supplied].”
In allowing Reineke’s Dist./Mun. Cts. R. Civ. R, Rule 56 motion for summary judgment, and in denying DiCostanzo’s cross-motion, the trial judge made extensive written rulings[5] to the effect that the term “obligations” in paragraph F(a) was ambiguous, and that in construing such ambiguity against DiCostanzo and in light of paragraph 12, it was clear that DiCostanzo assumed responsibility for all Smyly Chevrolet, Inc. obligations, including the Boston Globe debt.
*197 The trial court’s interpretation of the parties’ Agreement was error, and the court’s summary judgment for plaintiff Reineke must be reversed.
1. Reineke’s indemnification claim is predicated on the unfounded contention that the single paragraph F(a) phrase “removed from their obligations” is the cornerstone of the parties’ intended agreement for DiCostanzo to assume full liability for all past and future corporate debts in exchange for his acquisition of the stock of the nearly insolvent corporation. Even assuming arguendo, in violation of all established canons of contract construction, that Reineke’s position was a reasonable interpretation of paragraph F(a), DiCostanzo would still have been entitled to summary judgment in his favor as a matter of law under para. F(b). The short answer to Reineke’s claim is that the word “or,” which clearly and unambiguously separates sections (a) and (b) of para. F, must be read in its ordinary disjunctive sense. Shabshelowitz v. Fall River Gas Co., 412 Mass. 259, 263-264 (1992); Dawson v. Rogers, 7 Mass. App. Ct. 351, 353 (1979). So viewed, para. F visited upon DiCostanzo alternative obligations, at his election, either to free Reineke from whatever liabilities section (a) encompassed, or simply to indemnify him under section (b) from only the Smyly and Bank Obligations which, by contractual definition, did not include the Boston Globe debt at issue herein.
2. Such summary treatment of Reineke’s claim based on para. F(b), however, improperly accords some validity to Reineke’s interpretation of paragraph F(a). Reineke erroneously attributes to the single phrase “removed from their obligations” a significance independent of not only the Smyly and Bank Obligations to which para. F clearly pertains, but also the language and tenor of the Agreement in its entirety.
[T]he scope of a party’s obligations cannot be delineated by isolating words and interpreting them as though they stood alone ... Not only must due weight be accorded to the immediate context, but no part of the contract is to be disregarded.
Starr v. Fordham, 420 Mass. 178, 190 (1995). See also Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 208 (1991). The “immediate context” of para. F is the liability of named individuals for the Smyly and Bank obligations. If the single para. F(a) term “obligations” alone signified all of the Corporation’s outstanding debts and liabilities, as Reineke argues, the remainder of para. F which references the specific Smyly and Bank Obligations of the Corporation, as well as paragraphs D and E which define them, would be reduced to unnecessary surplusage. It is axiomatic that “every word and phrase of a contract should, if possible, be given meaning, and that none should be treated as surplusage if any other construction is rationally possible.” Computer Systems of America, Inc. v. Western Life Assur. Co. of Ohio, 19 Mass. App. Ct. 430, 437 (1985). See also O’Connell & Co. v. Braidman, 1993 Mass. App. Div. 21, 23.
A construction other than Reineke’s is not just possible, but required by the clear language of para. F properly read in conjunction with paragraphs D and E. USM Corp. v. Arthur D. Little Sys. Inc., 28 Mass. App. Ct. 108, 116 (1989). Paragraph D indicates, and it is undisputed herein, that Reineke and Woodcome were not only guarantors, but actual signatories, of the promissory notes constituting the Smyly Obligations. Thus the language “removed from their obligations” clearly refers to Reineke’s and Woodcome’s direct liability or obligations as makers of the Smyly notes as distinguished from their obligations “as personal guarantors” thereof. The fact that this construction of the para. F(a) term “obligations” is consistent with other phraseology in the Agreement supports its validity. B.J. Harland Elec. Co. v. Granger, 24 Mass. App. Ct. 506, 514 (1987). In all other clauses wherein the parties refer to the Corporation’s general debts and liabilities, they utilize the phrase “obligations of the Corporation.” The modifier “of the Corporation” is conspicuously absent from the para. F(a) term “obligations.” That term is instead modified by the possessive “their” which can only refer to the individuals listed immediately prior in the sentence.
3. Reineke’s mere suggestion of an alternative interpretation, based on his unilateral intent or expectations about the parties’ contractual undertaking, did not establish the *198 existence of an ambiguity in paragraph F(a). “[A]n ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.” Jefferson Ins. Co. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987). An ambiguity exists only where a contract provision is “reasonably susceptible of more than one meaning.” Mitcheson v. Izdepski, 32 Mass. App. Ct. 903, 905 (1992). See generally, Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995); Nelson v. Cambridge Mut. Fire Ins. Co., 30 Mass. 671, 673 (1991). Reineke’s construction is patently unreasonable upon any proper attempt to view the Agreement “as a rational business instrument,” Bray v. Hickman, 263 Mass. 409, 412 (1928), “entered into by practical men to accomplish an honest purpose in accord with common sense.” Kennedy Bros. v. Bird, 287 Mass. 477, 483 (1934).
The Agreement was a contract for the sale of corporate stock. It is elementary that a corporation is a legal entity separate from its stockholders, M. McDonough Corp. v. Connolly, 313 Mass. 62, 65-66 (1943), and that, in the absence of fraud, the mere purchase or acquisition of stock does not render the stockholder personally liable for debts or obligations of the corporation. Leventhal v. Atlantic Fin. Corp., 316 Mass. 194, 200-201 (1944). Indeed, the most salient characteristic of stock ownership is that the stockholder remains free of personal liability for corporate debts. Appleby v. Wallins, 336 Mass. 35, 38 (1957).
Thus the Agreement did not even involve the assumption or transfer of responsibility for general Corporation debts. As Reineke, even as the principal stockholder, was not individually liable for any debt or obligation of the Corporation which he had not personally guaranteed or assumed, no reasonable inference could be drawn that Reineke would not have sold his stock if DiCostanzo had not agreed to assume all the outstanding Corporation debts listed in Exhibit L. Nor, as Reineke suggests, can the Agreement be properly construed as requiring DiCostanzo to assume any and all corporate debts Reineke may have individually guaranteed, whether or not such guaranties and the amounts thereof were disclosed to DiCostanzo. Reineke and DiCostanzo were not the sole parties to the Agreement. DiCostanzo consented to buy stock owned by both Reineke and Visconte and to lease the premises with an option to buy from the Wallems in exchange for relieving Reineke, Visconte, the Wallems and their associates from the personal liability they had in common for the considerable amounts of the Smyly and Bank obligations. There is nothing in the record to suggest that all of the parties to the Agreement entered into the transaction for the purpose of relieving Reineke from his individual liability on personal guaranties of other Corporation debts.
4. In any event, the best evidence of the parties’ intent as to the scope of DiCostanzo’s indemnification duties is the actual contract language used by them in the Agreement. Affiliated FM Ins. Co. v. Constitution Reinsurance Corp., 416 Mass. 839, 845-846 (1994); Shane v. Winter Hill Fed. Sav. & Loan Ass’n., 397 Mass. 479, 484 (1986). In addition to the unambiguous provisions of para. F, Section 12 unequivocally required DiCostanzo to indemnify Reineke for any claim asserted against Reineke “in connection with the business of the Corporation, unless caused bv actions of the Corporation prior to the closing date or to independent action by ... Reineke at any time [emphasis supplied].” The clear and ordinary meaning of this provision was that Reineke was not entitled to indemnification for any Corporation debt or liability which arose prior to the Agreement closing date. As the Boston Globe advertising expenses at issue herein were incurred by the Corporation well prior to August, 1995, DiCostanzo was not obligated to indemnify Reineke for the same.
Accordingly, the trial court’s allowance of Reineke’s Rule 56 motion and its entry of judgment in his favor are reversed and vacated. Summary judgment is to be entered for defendant DiCostanzo.
So ordered.

 “Wallem” is identified in paragraphs A and C of the Agreement as the singular contract term for two individuals who owned and leased the real estate upon which the Corporation conducted its automobile dealership business. Woodcome is identified only in paragraph D as a signatory and/or guarantor of the promissory notes constituting the “Smyly Obligations.” Both Wallems signed the August 5, 1995 Purchase Agreement; Woodcome was not a party.

 It is unclear whether Reineke informed DiCostanzo before the closing that he had personally guaranteed the Boston Globe debt. Reineke endeavored to join DiCostanzo as a third-panty defendant in the Boston Globe’s superior court action against Reineke as guarantor. The Superior Court denied Reineke’s motion.

 Exhibit L is one of more than a dozen lengthy attachments to the Agreement, consisting of corporate financial statements, property inventories, leases, insurance contracts, employee benefit obligations and other asset and liability matters obviously relevant to the value of the corporate stock which was the subject of the parties’ purchase agreement.

 “After assessing the written contract in its entirety, I conclude that Reineke intended to transfer his entire interest in Smyly Chevrolet in return for DiCostanzo’s promise to free Reineke from any and all of the corporate liabilities existing at the date of closing, August 5, 1995 ... An ambiguity in part (a) of this paragraph [F] is readily apparent as there can be two interpretations as to its meaning. As Reineke argues, it could mean that DiCostanzo would be responsible for 1) Reineke’s obligations (towards the Corporation), 2) the Smyly Obligations, and 3) the Bank Obligations. As DiCostanzo argues, it could mean that he would be responsible for Reineke’s obligations and personal guarantees of the Smyly Obligations and Bank Obligations only ... DiCostanzo’s attorney was the drafter of this Purchase Agreement ... [and] ambiguities within a written contract shall be constmed against the drafter. Since the Boston Globe debt was an obligation due by Reineke, DiCostanzo would be required to assume this debt under part (a) of Paragraph ‘F.’
“In addition, the phrases ‘Smyly Obligations’ and ‘Bank Obligations’ within ... ‘F’ appear to be misleading when read in conjunction with Paragraphs ‘D’ and ‘E.’ These paragraphs list the largest and seemingly more important liabilities of the corporation, as well as Reineke’s obligations as a signatory or guarantor of certain obligations. However, these paragraphs do not state that these obligations are limited to the ones listed within ... Surely these are not the only obligations that Smyly Chevrolet was responsible for at the time of closing ..., which is made clear by the list of other obligations listed in Exhibit ‘L’ of the contract.
“I cannot accept the argument by DiCostanzo that the limited obligations listed with Paragraph ‘D’ are all encompassing of his assumed responsibilities under Paragraph ‘F.’ It would be senseless for Reineke to transfer his entire interest in Smyly Chevrolet for only $1.00 along with DiCostanzo’s promise to assume only the obligations stated in Paragraph ‘D,’ while at the same time Reineke would cover any other costs and obligations ... [T]he intent was for Reineke to walk away from his venture with Smyly Chevrolet free and clear from any liabilities and obligations.
“Additional evidence that the parties agreed to have Reineke be relieved from any further obligations or liabilities is found in Paragraph ‘12’... which makes no reference to any particular liabilities... Paragraph ‘12’ mandated that DiCostanzo indemnify Reineke for any claim or liability asserted against him ‘in connection with the business of the corporation.’ The Boston Globe debt listed in Exhibit ‘L’ is clearly a liability asserted against Reineke that has a connection with the business of the Corporation. Therefore, DiCostanzo is obligated to indemnify Reineke for the Boston Globe debt.”