NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1005

GARRETT HEALEY[1] & another[2]

vs.

ROCKLAND TRUST COMPANY.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Garrett Healey, doing business as Garrett Auctioneers, and John McQuaid, brought this action to recover a commission for the sale of real estate that they allege they were owed by the defendant, Rockland Trust Company, as the successor by merger to East Boston Savings Bank (bank).  A judge of the Superior Court granted summary judgment in favor of the defendant on all claims.  On appeal, the plaintiffs argue that their contract-based claims are not barred by the real estate licensing statute, G. L. c. 112, § 87RR, and the Statute of

---

[1] Doing business as Garrett Auctioneers.

[2] John McQuaid.

[3] Successor by merger to East Boston Savings Bank.

Frauds, G. L. c. 259, § 7.  The plaintiffs also argue in the alternative that McQuaid is entitled to recover under a theory of quantum meruit.[4]  We affirm.

Background.  1.  Facts.[5]  From 2006 to 2008, the bank made loans totaling over $4 million to Norchamp Development, LLC (Norchamp), in connection with a forty-unit development project in the town of Middleton.  In exchange, Norchamp granted the bank mortgages on the property, and Frank Ciampa, a principal of Norchamp, personally guaranteed the loans.  By 2010, Norchamp was in default on those loans and mortgages, and the project was in financial trouble.  In September 2010, the bank filed a lawsuit against Norchamp and Ciampa to recover the amounts owed, and the bank was granted a real estate attachment of roughly $4.5 million against Norchamp and $3.5 million against Ciampa (Norchamp litigation).  Given the trouble facing the project, the bank was considering its options to recover the amount it

---

[4] The plaintiffs concede that their claim for a violation of G. L. c. 93A is barred by the relevant statute of limitations. See G. L. c. 260, § 5A.  Therefore, we affirm the portion of the judgment dismissing that claim without further discussion.

[5] The facts are drawn from the summary judgment record. Where disputes of fact exist, we view the evidence in the light most favorable to the party against whom summary judgment was entered, here, the plaintiffs.  See Williams v. Board of Appeals of Norwell, 490 Mass. 684, 685 (2022).

was owed, including through a short sale or foreclosure. However, Norchamp remained the owner of the property.

Also in September 2010, the bank's president entered into an oral agreement with Healey, a licensed auctioneer, to secure a buyer for the property in exchange for a ten percent commission. At the meeting, Healey stated that he could auction the property and also that he would work with a "broker of record" in case they received an offer to purchase ahead of the live auction. Thereafter, Healey entered into an oral agreement with McQuaid, a licensed real estate broker, whereby McQuaid would serve as the broker of record for the property and the two would share the commission. Neither agreement -- i.e., the one between Healey and the bank or the one between Healey and McQuaid -- was reduced to writing.

Healey listed the property on his auctioneering website, but later removed the listing at the bank's request because it erroneously stated the property was "bank owned." Healey also introduced a potential buyer to the bank's president, but that person decided not to move forward with the deal.

Meanwhile, McQuaid identified Peter Barbagallo, a long-term subdivision developer, as a possible purchaser for the property. McQuaid engaged in negotiations on Barbagallo's behalf about the potential sale. McQuaid brought Barbagallo to the property countless times, reviewed Barbagallo's financials, discussed

3

specifics of the development with Barbagallo, brought in a potential investor, and produced a broker's opinion of the value of the property. McQuaid also met with Barbagallo and a vice president of the bank. In November 2010, Barbagallo, through McQuaid, made a written offer to the bank and Ciampa to purchase the property for $3.5 million. After receiving the offer, Norchamp's counsel, who was working closely with the bank, stated in an e-mail message to Healey,

> "There is no offer accepted at this time. But time is of the essence. Also, the offer has to be [accepted] by the bank, so while Frank [Ciampa] can agree on a sales commission there is going to . . . have to be some wiggle room on your payment. The bank will not allow you a 10% commission on a payoff short by over [$]1,000,000.00 [of the amount owed on the loans]. [Please], lets see what the offer is and where I can go with the Bank, we do have to move fast on this."

Ultimately, Barbagallo's offer was not accepted.

In 2011, the parties in the Norchamp litigation reached a settlement. As part of the settlement, Ciampa, Barbagallo, and entities controlled by them, formed Cranberry Commons Condominium, LLC (Cranberry Commons), and Norchamp conveyed the property to Cranberry Commons for $2.6 million. At the time, the bank believed the sale "was the best deal that the Bank could negotiate for the existing subject Norchamp loans." McQuaid and Barbagallo dropped off a deposit check with the bank's counsel. McQuaid also attended the closing. At the closing, the bank's vice president inquired about Healey's check

4

and McQuaid was told by Norchamp's counsel that the check would be forthcoming.  Ultimately, the bank received all the proceeds from the sale, but neither Healey nor McQuaid received a commission.

2.  Proceedings.  In March 2014, Healy filed a lawsuit against Ciampa, Norchamp, Barbagallo, and Cranberry Commons seeking to recover a commission for the sale.  Summary judgment entered in favor of those defendants on all claims.  In January 2017, the plaintiffs then brought this action against the bank claiming breach of contract, quantum meruit, promissory estoppel, fraud in the inducement, fraud and misrepresentation, breach of the covenant of good faith and fair dealing, and a violation of G. L. c. 93A.  The bank unsuccessfully moved to dismiss the complaint, and the parties also obtained several continuances.  In January 2022, five years after the commencement of this action, the bank filed its answer, raising several affirmative defenses including that the plaintiffs' claims are barred by the Statute of Frauds.  Ultimately, on the parties' motions for summary judgment and for reconsideration, a judge of the Superior Court granted summary judgment to the defendant on all claims.[6]  This appeal followed.

---

[6] While this action was pending, the judge allowed the bank's assented-to motion to substitute Rockland Trust Company as the defendant.

5

Discussion. "The allowance of a motion for summary judgment 'is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law'" (citation omitted). Williams v. Board of Appeals of Norwell, 490 Mass. 684, 689 (2022). We review the judge's decision granting summary judgment de novo. See Metcalf v. BSC Group, Inc., 492 Mass. 676, 680 (2023).

1. Contract claims. The plaintiffs argue that they are entitled to a real estate commission for their services under a breach of contract theory. Such claims are barred by G. L. c. 112, § 87RR, and the Statute of Frauds.

a. General Laws c. 112, § 87RR. Section 87RR requires that anyone engaging in the business of a real estate broker "directly or indirectly, either temporarily or as an incident to any other transaction, or otherwise" must be licensed; the statute also provides that no one shall recover in an action "for compensation for services as a broker performed within the commonwealth unless he was a duly licensed broker at the time such services were performed." G. L. c. 112, § 87RR. General Laws c. 112, § 87QQ, provides some exceptions to the licensing requirements of § 87RR, including, as relevant here, for "a person acting as a licensed auctioneer."

Healey argues that summary judgment was inappropriate because a factual dispute exists whether he was acting as a

6

licensed auctioneer under § 87QQ at all relevant times and, thus, was exempt from the requirements of § 87RR.  On this point, Healey points to his own affidavit that he was working in his capacity as an auctioneer "even though the sale never came to an auction in the traditional sense."  While Healey stated that the "term 'auction' can be misleading, as it doesn't necessarily refer to a specific time and place where potential buyers gather to place bids," his position is belied by the plain meaning of the words in the statutes.

The Legislature has broadly defined a real estate broker to include, among other things, one who, for a commission,

> "sells, . . . , purchases, . . . or negotiates, or offers, attempts or agrees to negotiate the sale, exchange, [or] purchase, . . . of any real estate, . . . or assists or directs in the procuring of prospects or the negotiation or completion of any agreement or transaction which results or is intended to result in the sale, exchange, [or] purchase, . . . of any real estate."

G. L. c. 112, § 87PP.

Here, the plaintiffs seek a commission for brokerage services, i.e., locating a buyer and negotiating the sale of real estate, outside of the auction process based on an oral agreement made by a person who is not a licensed broker.  Cf. G. L. c. 100, § 1 (auctioneer is one who, for commission, "by means of, or process of, an auction or sale at auction, offers, negotiates or attempts to negotiate, a listing contract, sale, purchase or exchange of" real property, among other things

7

[emphasis added]); id. (auction is "any sale, coming within its ordinary meaning, by public outcry"). Even if an auctioneer may, as Healey asserts, assist in locating potential buyers outside of a formal auction, the parties do not dispute that Healey enlisted the services of a licensed broker "in case we received an offer (or 'bid') ahead of the live auction," and because Healey "wanted to use McQuaid's real estate license." Here, § 87RR controls because a licensed broker and not just a licensed auctioneer was needed to effectuate the type of sale at issue between Barbagallo and Norchamp. See Turnpike Motors, Inc. v. Newbury Group, Inc., 403 Mass. 291, 295 (1988), S.C., 413 Mass. 119 (1992) (unlicensed broker may not collect commission on sale of real estate under § 87RR).

b. Statute of Frauds. i. Waiver. As an initial matter, the plaintiffs argue that the defendant waived the Statute of Frauds defense by failing to properly plead it. An affirmative defense, like the Statute of Frauds, must be set forth "[i]n pleading to a preceding pleading." Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974). Here, the defendant complied with that rule by setting forth the defense in its answer. See Mass. R. Civ. P. 7 (a), as amended, 385 Mass. 1215 (1982) (pleadings include complaint and answer). See also Stanton Indus., Inc. v. Columbus Mills, Inc., 4 Mass. App. Ct. 793, 793 (1976).

8

Nonetheless, the plaintiffs argue that they were prejudiced by the fact that the answer was filed five years after this action was commenced; however, the plaintiffs have not cited any legal authority demonstrating that waiver of pleaded defenses is required in these circumstances. Moreover, the plaintiffs failed to file a motion to strike the answer, request to reopen discovery, or otherwise argue prejudice before the judge in the Superior Court; therefore, we decline to treat the affirmative defense as waived on appeal.[7] See Mass. R. Civ. P. 12 (f), 365 Mass. 754 (1974) (motion to strike may be filed within twenty days of service of pleading).

ii. Application. The Statute of Frauds, G. L. c. 259, § 7, provides that "[a]ny agreement to pay compensation for service as a broker or finder . . . shall be void and unenforceable unless such agreement is in writing." The statute excludes "a contract to pay compensation for professional services of . . . a licensed real estate broker . . . acting in their professional capacity." Id.

---

[7] The plaintiffs argued in a written opposition to summary judgment that the Statute of Frauds defense was waived because the defendant did not raise that defense in its motion to dismiss. However, at the hearing, the plaintiffs' counsel properly acknowledged that a motion to dismiss is not a pleading and "all but withdr[e]w" the argument. See National Equity Props., Inc. v. Hanover Ins. Co., 74 Mass. App. Ct. 917, 918 (2009).

9

The oral agreement between Healey and the bank was one for real estate brokerage services (as discussed above) and Healey was not a licensed broker. Therefore, the Statute of Frauds governs any such agreement and renders the oral agreement in this case unenforceable. See G. L. c. 259, § 7.

To the extent that the plaintiffs argue that the Statute of Frauds is inapplicable to the agreement because the plaintiffs were in a joint venture and McQuaid was a licensed real estate broker, that argument is foreclosed by 254 Code Mass. Regs. § 2.00(11) (1998).[8] That regulation requires an entity like a joint venture to obtain a separate brokerage license and precludes an entity that does not do so or a licensee that works on behalf of such unlicensed entity from "engag[ing] in the business of real estate brokering."[9] Id. The plaintiffs did not

---

[8] The plaintiffs assert that the defendant waived its argument concerning 254 Code Mass. Regs. § 2.00(11), because the defendant did not plead the defenses of illegality and unenforceability in its answer. We disagree where the argument pertains to the defendant's assertion that the Statute of Frauds applies and the defendant pleaded such defense.

[9] Title 254 Code Mass. Regs. § 2.00(11), as in effect at the time of the sale of the property, provided, in part, that

"No licensee may engage in the business of real estate brokering in a corporation, limited liability company (LLC), partnership, limited liability partnership (LLP), association or society unless the entity is licensed by the Board."

The regulation also required that to obtain a license, an officer or partner of such entity must be a broker licensed by

10

obtain a separate license for their joint venture and the regulation precludes the plaintiffs from simply relying on McQuaid's brokerage license to avoid application of the Statute of Frauds.  See Thomann v. Board of Registration of Real Estate Brokers & Salesmen, 481 Mass. 1006, 1010 (2018) (licensed broker who engaged in real estate brokering business through unlicensed limited liability company violated 254 Code Mass. Regs. § 2.00[11]).  The agreement between Healey and the bank is not enforceable.  See G. L. c. 259, § 7.[10],[11]

2.  Quantum meruit claim.  McQuaid argues that even if the contract-based claims fail, he may recover under a theory of

---

the State.  See id.  We read the expansive language of the regulation, including the reference to a partnership and an association, to encompass a joint venture.  Cf. Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 623 (1990) ("Though similar to a partnership, a 'joint venture' differs in that it is generally limited to a single transaction").

[10] For the same reason, Healey's claim for recovery under a quantum meruit theory is foreclosed.  See Cantell v. Hill Holliday Connors Cosmopulos, Inc., 55 Mass. App. Ct. 550, 554 n.6 (2002).

[11] Because any oral agreement is unenforceable pursuant the Statute of Frauds, McQuaid cannot recover as an intended third-party beneficiary of the contract.  See Miller v. Mooney, 431 Mass. 57, 63 (2000); Barrow v. Dartmouth House Nursing Home, Inc., 86 Mass. App. Ct. 128, 133 (2014).  See also Restatement (Second) of Contracts § 309(1) & comment a (1981).  Moreover, other than arguing that the contract between Healey and the bank was enforceable, the plaintiffs make no separate argument about their fraud in the inducement, fraud and misrepresentation, and breach of the covenant of good faith and fair dealing claims. Therefore, we affirm the portion of the judgment as to those claims.

11

quantum meruit.  To prevail on that claim, McQuaid "must prove (1) that [he] conferred a measurable benefit upon the [bank]; (2) that [McQuaid] reasonably expected compensation from the [bank]; and (3) that the [bank] accepted the benefit with the knowledge, actual or chargeable, of [McQuaid's] reasonable expectation."  Finard & Co. v. Sitt Asset Mgt., 79 Mass. App. Ct. 226, 229 (2011).

The facts fail to establish the second and third elements of the claim.  Where McQuaid never had any direct communications with the bank about a commission, he relies only on Healey's representations and the circumstances of the sale as the basis for his expectations.  Contrast Finard & Co., 79 Mass. App. Ct. at 230 (plaintiffs-brokers, who secured tenant for shopping mall, were entitled to commission on quantum meruit theory where management company of mall acknowledged in writing during negotiations that mall's owner would pay broker's fee to plaintiffs).  McQuaid knew that the bank was not the record owner of the property and that the bank was considering but had not foreclosed on the property.  Contrast Isenberg v. Williams, 306 Mass. 86, 88 (1940) ("If the broker is ignorant what the defendant's relation to the land is, and is asked to find a purchaser for the land, and does find one, who is willing to buy on terms satisfactory to the defendant, his commission is earned, even if the defendant does not then own the land

12

[emphasis added, citation omitted]).  Although McQuaid contends he was acting as the bank's broker, he does not dispute that he served as Barbagallo's broker with respect to the purchase of the property.  McQuaid's communications with the bank and others were consistent with his representation of Barbagallo.  Moreover, neither Barbagallo nor the bank executed any document consenting to McQuaid's representation of them, as would be required under 254 Code Mass. Regs. § 3.00(13) (2005).  Viewing the evidence in the light most favorable to the plaintiffs, McQuaid has not shown that he had a reasonable expectation of receiving a commission from the bank -- as opposed to from the buyer, the seller, or Healey.

As the motion judge noted, McQuaid's own actions also preclude his recovery because "[g]ood faith is a requirement for recovery under quantum meruit."[12]  G4S Tech. LLC v. Massachusetts Tech. Park Corp., 479 Mass. 721, 736 (2018).  McQuaid knew or should have known that Healey, as an unlicensed broker, could not recover compensation for brokerage services under G. L. c. 112, § 87RR.  McQuaid still agreed to serve as the licensed broker for Healey without adhering to 254 Code Mass. Regs.

---

[12] The motion judge rejected McQuaid's assertion that this argument is waived because the defendant failed to plead illegality or unclean hands as an affirmative defense.  That decision was not error and we do not disturb it.  See Shea v. Bay State Gas Co., 383 Mass. 218, 219 n.3 (1981).

13

§ 2.00(11), which would have required the plaintiffs, if they were engaged in a joint venture as they now allege, to obtain a separate brokerage license for that entity.

The same facts also fail to establish that the bank knew that McQuaid reasonably expected payment from the bank. McQuaid asserted that it was "customary practice" for "banks [to] hire and pay real estate professionals commissions all the time when they have an interest in it, even if they are not the property owner." However, the bank did not hire McQuaid and did not discuss a commission with him.

Judgment entered May 23, 2024, affirmed.

By the Court (Meade, Neyman & Walsh, JJ.[13]),

Clerk

Entered: November 21, 2025.

---

[13] The panelists are listed in order of seniority.

14